UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

- - - - - - - - - - - - -

UNITED STATES OF AMERICA,

        Plaintiff,

   v.

BRANDON PIPER,

        Defendant.

_____/

No. 1:26-cr-00018-RJJ

Hon. ROBERT J. JONKER
U.S. District Judge

## PLEA AGREEMENT

This constitutes the plea agreement between BRANDON PIPER and the United States Attorney's Office for the Western District of Michigan.  The terms of the agreement are as follows:

1.    <u>Plea to Information</u>.  Defendant gives up the right to Indictment by a grand jury and agrees to plead guilty to the Felony Information, charging conspiracy to introduce misbranded drugs into interstate commerce, in violation of Title 18, United States Code, Section 371.

2.    <u>Defendant Understands the Crime</u>.  For Defendant to be guilty of violating Title 18, United States Code, Section 371, the following must be true:

- First, that two or more persons conspired, or agreed, to commit the crime of introducing misbranded drugs into interstate commerce with the intent to defraud or mislead;

- Second, that Defendant knew of the conspiracy and its objects;

- Third, that Defendant joined the conspiracy with the intent that at least one of the conspirators engage in conduct that satisfies the elements of introducing misbranded drugs into interstate commerce with the intent to defraud or mislead; and

- Fourth, that a member of the conspiracy committed at least one overt act for the purpose of advancing or helping the conspiracy.

The crime of introducing a misbranded drug in interstate commerce with the intent to defraud or mislead in violation of Title 21, United States Code, Sections 331(a), 353(b)(1), and 333(a)(2), is defined as:

- Introducing or causing the introduction into interstate commerce of a drug;

- The drug was adulterated or misbranded; and

- Acting with intent to defraud or mislead.

A prescription drug is misbranded if it is dispensed without a written prescription of a practitioner licensed by law to administer such drugs; if its labeling is false or misleading; and/or if its labeling does not bear adequate directions for use.

Defendant is pleading guilty because Defendant is guilty of the charge described above.

3.      Defendant Understands the Penalty. The statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 371 is the following:  5 years of imprisonment; a 3-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss, whichever is greater;  and a mandatory special assessment of $100.

4.      Assessments, Restitution, Other Criminal Monetary Penalties, and Financial Cooperation. Defendant agrees to pay the special assessment on the day of sentencing.

a.      Restitution.  Defendant acknowledges the Court will order restitution as required by law

b.      Financial Cooperation.  Defendant also:

i.   agrees to fully and truthfully complete and return the financial disclosure form the U.S. Attorney's Office provides, including any waivers, consents, or releases requested to access records to verify the financial information within 30 days of the date of this plea agreement;

ii.  agrees that any restitution or other criminal monetary penalties imposed by the Court shall be due and payable immediately, any payment plan set by the Court represents a minimum payment obligation, and the United States may immediately enforce the judgment in full; and

iii. agrees that prior to sentencing, he will not sell or give away any asset worth $5,000 or more, without first notifying the U.S. Attorney's Office. Defendant also agrees to notify the U.S. Attorney's Office of any proceeding, such as foreclosure or divorce, that may impact Defendant's financial condition.

5.      Supervised Release Defined.  Supervised release is a period following imprisonment during which Defendant will be subject to various restrictions and requirements. Defendant understands that if he violates one or more of the conditions of any supervised release imposed, he may be returned to prison for all or part of the term of supervised release, which could result in Defendant serving a total term of imprisonment greater than the statutory maximum stated above.

6.    Asset Forfeiture and Financial Accountability. Defendant agrees to disclose to law enforcement officials the whereabouts of, Defendant's ownership interest in, and all other information known to Defendant about, all assets, money or property of any kind, derived from or acquired as a result of, or used to facilitate the commission of, Defendant's illegal activities.   Defendant agrees to assist and cooperate in the recovery of all monies, property, or assets derived from, or acquired as a result of the offense charged in the Information. Defendant further agrees to forfeit all rights, title, and interest in and to such items.

7.    Factual Basis of Guilt. Defendant and the U.S. Attorney's Office agree and stipulate to the following statement of facts which need not be proven at the time of the plea or sentencing:

In or about October 2023, Defendant, a resident of the Western District of Michigan, began working with others to sell peptides and other prescription drugs via a Canadian website established by two Canadian citizens known to Defendant. Defendant and his co-conspirators obtained the drugs sold on the website from overseas suppliers, primarily from China, and not from pharmaceutical companies authorized by the U.S. Food and Drug Administration (FDA) to produce them.

Among other drugs, the Canadian website sold semaglutide and tirzepatide. Defendant acknowledges that, currently, there are three semaglutide products that are FDA-approved for the U.S. market, and these products are only available pursuant to a prescription from a licensed practitioner. Likewise, Defendant acknowledges that there are two tirzepatide products that are FDA-approved for the

4

U.S. market, and these products are likewise only available pursuant to a prescription from a licensed practitioner.

Defendant, along with another co-conspirator located in the Western District of Michigan, worked with the Canadian owners of the website until in or around October 2024. During that time, Defendant and his co-conspirator were primarily responsible for overseeing the website's U.S.-based warehouse and filling orders placed by U.S. customers. Defendant obtained information about orders placed on the website and then mailed or caused the drugs to be mailed from locations in West Michigan, often using a private mailbox registered in his name in Holland, Michigan to help conceal the true source of the drugs. Some of the drugs Defendant shipped bore labels that they were the "PRODUCT OF USA" even though Defendant knew the drugs had been obtained from overseas. This caused the drugs to be misbranded. Likewise, Defendant did not include instructions for customers' use of the drugs that he shipped, also causing the drugs he shipped to be misbranded.

Finally, before filling the orders, Defendant never asked for or saw any prescriptions for the drugs he was shipping or causing to be shipped out. The lack of prescriptions caused the drugs to be misbranded. Despite disclaimers on the website that the drugs were "for research purposes only," Defendant knew that the drugs he was shipping were for individual human consumption by the website's customers.

Specifically, on or about July 9, 2024, Defendant shipped or caused to be shipped semaglutide, purchased from the Canadian company's website, from an address in Holland, Michigan, which is in the Western District of Michigan, to an

address in Ypsilanti, Michigan. The drug was labeled "PRODUCT OF USA." Additionally, on or about August 12, 2024, Defendant shipped or caused to be shipped tirzepatide, purchased from the Canadian company's website, from an address in Holland, Michigan, to an address in Ypsilanti, Michigan. The drug was also labeled "PRODUCT OF USA" even though Defendant knew the drugs came from overseas.

In addition to shipping products for the website, Defendant also worked as an "affiliate" – communicating directly with customers and providing dosing and other advice on using the drugs they purchased from the Canadian website. Defendant also promoted the drugs on his personal social media platforms, all of which resulted in him being paid additional income by the website.

In or around August 2024, Defendant purchased the domain name milestonepurity.com and began developing a separate website that also sold misbranded prescription drugs obtained from Chinese suppliers and not approved for sale in the United States. Ultimately, Defendant, along with a co-conspirator located in the Western District of Michigan, transitioned from working with the Canadian company to running milestonepurity.com. Defendant ran his new business out of his home. At no time while working for either business did Defendant ask for or see a prescription for the drugs sold, nor did he provide customers with adequate directions for the drug's use. Defendant's actions in shipping or causing the shipment of the misbranded drugs described here were committed with the intent to defraud or mislead..

8.     Acceptance of Responsibility. The U.S. Attorney's Office agrees not to oppose Defendant's request for a two-level reduction of his offense level for acceptance of responsibility under Section 3E1.1(a) of the Sentencing Guidelines. However, the U.S. Attorney's Office reserves the right to object to Defendant's request if it subsequently learns of conduct by Defendant that is inconsistent with the criteria set forth in the Commentary to Section 3E1.1. Should the Court grant a two-level reduction as provided herein, the Government will move the Court to grant an additional one-level reduction if the adjusted offense level is 16 or greater pursuant to Section 3E1.1(b).

9.     Non-Prosecution Agreement. The U.S. Attorney's Office for the Western District of Michigan agrees not to bring additional criminal charges against Defendant in the Western District of Michigan arising out of Defendant's introduction of misbranded drugs into interstate commerce, including his work with the Canadian company and Milestone Purity as described above, provided that the conduct is disclosed to the Government by Defendant or his attorney prior to the date of this agreement. Defendant shall remain subject to prosecution for any criminal activity he has failed to disclose to the Government prior to the date of the agreement. This promise of non-prosecution shall not include crimes of violence, if any, or criminal tax violations (including conspiracy to commit such violations chargeable under 18 U.S.C. § 371).

10.     Prison Placement. The U.S. Attorney's Office will not object to a request by Defendant that the Court recommend that Defendant be confined at any specific

institution. Both parties acknowledge that the Bureau of Prisons, in its sole discretion, decides prison placement and that, while the Bureau often gives deference to a Court's recommendation, the Bureau is not required to follow the Court's recommendation.

11. The Sentencing Guidelines. Defendant understands that, although the United States Sentencing Guidelines (the "Guidelines") are not mandatory, the Court must consult the Guidelines and take them into account when sentencing Defendant. Defendant understands that the Court, with the aid of the presentence report, will determine the facts and calculations relevant to sentencing. Defendant understands that Defendant and Defendant's attorney will have the opportunity to review the presentence report and to make objections, suggestions, and recommendations concerning the calculation of the Guideline range and the sentence to be imposed. Defendant further understands that the Court shall make the final determination of the Guideline range that applies in this case, and may impose a sentence within, above, or below the Guideline range, subject to the statutory maximum penalties described elsewhere in this Agreement. Defendant further understands that disagreement with the Guideline range or sentence shall not constitute a basis for withdrawal of the plea.

12. Guideline Agreements: Defendant and the U.S. Attorney's Office agree and stipulate that the Guidelines in this matter will be calculated under U.S.S.G. § 2B1.1. However, the parties reserve the right to argue about the amount of loss/gain attributable to the offense of conviction at the time of sentencing. Defendant and the

U.S. Attorney's Office each further reserve the right to argue that additional specific offense characteristics, adjustments and departures are appropriate.

a.    Stipulations Regarding Criminal History. There is no agreement as to Defendant's criminal history or criminal history category.

b.    Stipulations Not Binding in Court. Defendant understands that neither the United States Probation Office nor the Court is bound by any stipulation in this agreement, and that the Court, with the aid of the presentence report, will determine the facts and calculations relevant to sentencing. Both Defendant and the U.S. Attorney's Office are free to supplement the facts stipulated to in this agreement by supplying relevant information to the United States Probation Office and the Court, and to correct any factual misstatements relating to the calculation of the sentence. Defendant understands that if the Court finds facts or reaches conclusions different from those in any stipulation contained in this agreement, Defendant cannot, for that reason alone, withdraw his guilty plea.

13.    Waiver of Constitutional Rights. By pleading guilty, Defendant gives up the right to persist in a plea of not guilty and the right to a speedy and public trial by jury or by the Court. As a result of Defendant's guilty plea, there will be no trial. At any trial, whether by jury or by the Court, Defendant would have had the following rights:

a.    The right to the assistance of counsel, including, if Defendant could not afford an attorney, the right to have the Court appoint an attorney to represent Defendant.

9

b.   The right to be presumed innocent and to have the burden of proof placed on the Government to prove Defendant guilty beyond a reasonable doubt.

c.   The right to confront and cross-examine witnesses against Defendant.

d.   The right, if Defendant wished, to testify on Defendant's own behalf and present evidence in opposition to the charges, including the right to call witnesses and to subpoena those witnesses to testify.

e.   The right not to be compelled to testify, and, if Defendant chose not to testify or present evidence, to have that choice not be used against Defendant.

f.   By pleading guilty, Defendant also gives up all rights to pursue in this Court or on appeal any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

14.   Waiver of Appellate Rights. Defendant gives up his right to directly appeal his conviction, sentence, or any other matter relating to this prosecution on any ground, except as to claims that the sentence exceeds the statutory maximum.

15.   FOIA Requests. Defendant hereby waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

16.   Hyde Waiver. Defendant acknowledges, by his voluntary admissions of guilt, that the position of the U.S. Attorney's Office in this case is not vexatious, frivolous, or in bad faith, and Defendant hereby disclaims and waives any right to make any claim for attorney fees.

10

17. <u>The Court is not a Party to this Agreement</u>. Defendant understands that the Court is not a party to this agreement and is under no obligation to accept any recommendation by the U.S. Attorney's Office or the parties regarding the sentence to be imposed. Defendant further understands that, even if the Court ignores such a recommendation or imposes any sentence up to the maximum established by statute, Defendant cannot, for that reason, withdraw his guilty plea, and he will remain bound to fulfill all his obligations under this agreement. Defendant understands that no one—not the prosecutor, Defendant's attorney, or the Court—can make a binding prediction or promise regarding the sentence Defendant will receive, except that it will be within the statutory maximum.

18. <u>This Agreement is Limited to the Parties</u>. This agreement is limited to the U.S. Attorney's Office for the Western District of Michigan, and cannot bind any other federal, state or local prosecuting, administrative or regulatory authority. This agreement applies only to crimes committed by Defendant. This agreement does not apply to or preclude any past, present, or future forfeiture or civil actions.

19. <u>Consequences of Breach</u>. If Defendant breaches any provision of this agreement, including any promise of cooperation, whether before or after sentencing, the United States shall have the right to terminate this agreement, or deny any or all benefits to which Defendant would otherwise be entitled under the terms of this agreement. If the United States elects to terminate this agreement, the agreement shall be considered null and void, and the parties shall return to the same position they were in prior to the execution of this agreement, as though no agreement ever

11

existed. In such an event, Defendant shall remain liable for prosecution on all original charges, and the United States shall be free to bring such additional charges as the law and facts warrant.  Defendant further agrees to waive and forever give up his right to raise any claim that such a prosecution is time-barred if the prosecution is brought within one (1) year of the breach that gives rise to the termination of this agreement.

20.    This is the Complete Agreement.  This agreement has been entered into by both sides freely, knowingly, and voluntarily, and it incorporates the complete understanding between the parties. No other promises have been made, nor may any additional agreements, understandings or conditions be entered into unless in a writing signed by all parties or on the record in open court.

21.    Deadline for Acceptance of Agreement.  If a copy of this agreement, executed by Defendant and defense counsel, is not returned to the U.S. Attorney's Office by **2/27/2026**, this agreement will be withdrawn automatically and will thereafter have no legal effect or force, unless the U.S. Attorney's Office, in its sole discretion, chooses to accept an executed agreement after that date.

TIMOTHY VERHEY
United States Attorney

2/27/26
Date

STEPHANIE M. CAROWAN
Assistant United States Attorney

I have read this agreement and carefully discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. My attorney has advised me of my rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement. No promises or inducements have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

Feb 27, 2026

_____
Date

_____
Brandon Piper (Feb 27, 2026 10:46:31 EST)

BRANDON PIPER
Defendant

I am Brandon Piper's attorney.  I have carefully discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

_2/26/2026_____
Date

_____
RICK COLLINS
Attorney for Defendant Brandon Piper

Feb 27, 2026

_____
Date

_____
CHARLES CHAMBERLAIN
Attorney for Defendant Brandon Piper

13